| | | |
|---|---|---|
| JOSE ANDRES CAZARES, as Special | ) | |
| Administrator of the Estate of ANDREW | ) | |
| CAZARES, deceased and | ) | |
| | ) | |
| FAUSTO T. MANZERA, as Special | ) | |
| Administrator of the Estate of FAUSTO A. | ) | |
| MANZERA, et al., | ) | |
| Plaintiffs, | ) | Case No. 13 CV 5626 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| JOSEPH FRUGOLI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

As detailed in several of this Court's prior rulings, Andrew Cazares and Fausto A. Manzera died after their disabled vehicle was struck by an SUV driven by Joseph Frugoli, an intoxicated off-duty Chicago police officer. Plaintiffs Jose Cazares and Fausto T. Manzera as special administrators of the estates of Andrew Cazares and Fausto A. Manzera, brought suit against Frugoli and his employer, the City of Chicago, alleging wrongful death against Frugoli and a *Monell* claim against the City of Chicago. In anticipation of trial, which is set for October 30, 2017, the parties have filed a number of motions *in limine*, many of which the Court has already ruled upon. (*See* Dkt. 386.) The remaining thirteen motions in limine are addressed below.

## LEGAL STANDARD

Trial courts necessarily possess the broad discretion to rule on evidentiary issues before and during trial. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). The Federal Rules of Civil Procedure do not explicitly address motions *in limine*, but that power is inherently vested in

district courts in order to ensure just, speedy, and inexpensive dispute resolutions. *Id.*; *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) ("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). "Motions *in limine* are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *U.S. v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) ("[The] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings . . . . [It] permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose."). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). During a trial, the presiding judge "is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce*, 469 U.S. at 41-42; *see also Ohler v. U.S.*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

District courts have broad discretion to determine the admissibility of evidence under the Federal Rules of Evidence. *United States v. Abel*, 469 U.S. 45, 54 (1984) ("Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."); *McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1168 (2017) ("District courts decide . . . whether evidence is relevant at trial."); *United States v. Rogers*, 587 F.3d 816, 823 (7th Cir.

2009) ("Rule 403 remains an important safeguard against the admission of prejudicial evidence, and courts enjoy wide discretion in applying the rule."). Under Rule 401, evidence does not need to conclusively prove the ultimate fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule Evid. 401; *see New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985). Rule 403 limits this otherwise broad language favoring relevance, which permits courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Lynn*, 851 F.3d 786 (7th Cir. 2017). Rule 403 analyses require fact-intensive, context-specific inquiries and an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 88 (2008) (citing 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, p. 4–16 (3d ed.1999)).

## ANALYSIS

I.     **Plaintiffs' Motions** *in Limine*

A.     **Motion in Limine #2 - to bar testimony or reference to alcohol use by Andrew Cazares or Fausto Manzera. (Dkt. 328.)**

Plaintiffs seek to exclude evidence that at the time of their deaths, Manzera and Cazares were under the influence of alcohol. (Dkt. 368.) Plaintiffs submit that such evidence is irrelevant because at the time of the crash, the decedents had no control over their vehicle and to the extent it is relevant, its probity is outweighed by the danger of unfair prejudice, confusion, and the potential to mislead the jury.   (*Id.* at 2.)

After their car suffered a total electrical failure, Cazares and Manzera sat in their vehicle, which was stuck on the right side of one of the expressway's entrance ramps, for approximately twenty minutes. During that time, the decedents made several phone calls to friends but failed to notify the police or other authorities of their predicament. The decedents' inaction following their vehicle's electrical failure is relevant to the Defendants' contributory negligence defense. Specifically, as Defendants' expert is prepared to testify, it is possible that the decedents' intoxication resulted in their underappreciation of the danger they were in at the time of the collision and that their use of alcohol resulted in their failure to call for assistance from the police or another authority. *Jarrett v. United States*, the only case applying the Federal Rules of Evidence cited by Plaintiffs in their motion *in limine*, undercuts their position. In *Jarrett*, the Seventh Circuit found that newly discovered evidence regarding the occasional drug usage of one of the government's witnesses did not warrant a new trial because such evidence did not undermine the witness's memory and evidence of substance use could not be used to attack one's credibility. *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987). Instead, the court noted that such evidence was admissible only to attack the individual's perception of the underlying events. *Id.* Here, Defendants intend to present evidence of the decedents' alcohol use at the time of the accident not to undermine their credibility (their credibility is not at issue) but instead to challenge their perception of the danger they were in and their response to their predicament. Such use of evidence regarding substance use is exactly the type contemplated by *Jarrett* and other similar cases. *See also United States v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005); *Casares v. Bernal*, 790 F. Supp. 2d 769, 786 (N.D. Ill. 2011) (admitting evidence of plaintiff's substance use at time of incident because, *inter alia*, there was evidence that drugs and alcohol prevented him from understanding the events at the time they occurred). Plaintiffs'

reliance on an Illinois state court decision is misguided and their understanding of Illinois law on the issue is misplaced. *See Petraski v. Thedos*, 382 Ill. App. 3d 22, 27, 887 N.E.2d 24, 30 (2008) (reversing jury verdict in favor of plaintiff when trial court excluded evidence of plaintiff's alcohol use at time of vehicular accident, because evidence of plaintiff's intoxication was relevant to determining contributory negligence).

While Defendants may use evidence of the decedents' alcohol use to challenge their response to their vehicle's failure, the Court is unaware of any evidence to support the inference that Cazares' use of alcohol contributed to his car becoming disabled. Regardless, defense counsel represented that they would not attempt to make that argument during trial. The Court therefore denies Plaintiffs' Motion in Limine # 2 as set forth above.

**B.      Motion in Limine #3 – to bar testimony or reference to contributory negligence by plaintiffs. (Dkt. 329.)**

Without referencing any of the Federal Rules of Evidence, Plaintiffs seek to completely bar Defendants from arguing that the decedents were contributorily negligent. As noted above, evidence of the decedents' alcohol consumption is relevant and admissible, in a limited form, to demonstrate that the decedents were contributorily negligent. To the extent the evidence at trial otherwise supports the inference that the decedents were contributorily negligent, Defendants are permitted to make that argument. *See Levitt v. H. J. Jeffries, Inc.*, 517 F.2d 523, 525 (7th Cir. 1975) (reversing district court's decision to exclude evidence related to contributory negligence in diversity suit involving vehicular accident); *see also Payne v. Schneider Nat'l Carriers, Inc.*, No. CV 09-559-GPM, 2011 WL 13098430, at *1 (S.D. Ill. Apr. 26, 2011) ("[e]vidence of Mr. Payne's contributory negligence, if any, is not inadmissible as evidence under the demanding standard for exclusion of evidence in limine, as such evidence plainly goes to the matter of comparative fault."). For these reasons, Plaintiffs' Motion in Limine # 3 is denied.

**C.     Motion in Limine # 5 – to bar the City from arguing that a code of silence does not exist with the CPD. (Dkt. 331.)**

Primarily relying on public statements from the current mayor of Chicago and similar statements from several Chicago Police Department ("CPD") officials, Plaintiffs have moved to prevent the City of Chicago from arguing that a code of silence does not exist within the Chicago Police Department.

Public statements by Mayor Emanuel or Chicago police officials as to a general code of silence does not have a preclusive effect on the code of silence at issue here.  It is expected that one of the City of Chicago's primary defenses is that there was no code of silence at issue here or that it did not cause the collision at issue.  Defendants are entitled to present that defense and there is no justification for precluding Defendants from arguing that a code of silence does not exist, especially based on public comments from public officials who were not specifically addressing the facts of this case.

Further, in order to prevail at trial Plaintiffs must do more than merely establish the existence of a generalized code of silence within the CPD.  As detailed in the Court's summary judgment ruling, to succeed on their *Monell* claim, Plaintiffs must demonstrate the existence of a code of silence that protects officers who are involved in alcohol-related incidents and must demonstrate that that specific code of silence caused the decedents' constitutional deprivation. That being said, the Court will not preclude Plaintiffs from presenting evidence or argument regarding a general code of silence.  Such evidence may be helpful background to establishing the specific code of silence at issue here, as Plaintiffs must demonstrate a widespread custom, practice, or policy.  The cases cited by Defendants in support of their request to exclude references to a general code of silence are all factually distinguishable, since unlike here, none of them involved a *Monell* claim where an alleged code of silence was front and center. *See Jones*

6

*v. City of Chicago*, No. 14 C 4023, 2017 WL 413613, at *3 (N.D. Ill. Jan. 31, 2017) (excluding evidence of generalized code of silence but permitting evidence of officers covering up wrongful behavior in relation to plaintiff's conspiracy claims where there was not a *Monell* claim against the City alleging that a code of silence caused constitutional deprivation); *Lopez v. Vidljinovic*, No. 12 C 5751, 2016 WL 4429637, at *5 (N.D. Ill. Aug. 22, 2016) (excluding evidence of Mayor Emanuel's statements concerning a code of silence within the CPD when evaluating summary judgment, where plaintiff was attempting to show City failed to properly train its employees on use of force); *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011) (excluding evidence of a general code of silence in case involving claims for a coerced conviction, a § 1983 conspiracy claim, and a failure to intervene claim, but not a *Monell* claim predicated on a code of silence); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (permitting evidence that the officers involved adhered to a code of silence regarding the plaintiff's constitutional rights but excluding evidence of a generalized code of silence in case involving a *Monell* claim where the City was accused of failing to implement training or a mechanism for oversight and/or of police officer misconduct); cf. *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *7–*8 (N.D. Ill. Feb. 23, 2012) (permitting "code of silence" evidence presented by same experts in support of *Monell* claim predicated on code of silence). Furthermore, the Court has deemed admissible the testimony of Lou Reiter, one of Plaintiffs' experts who intends to testify about the existence of a code of silence within the CPD.

> ### D. Motion in Limine # 7 – to bar testimony of or reference to, by argument or otherwise, regarding decedents' prior police contact and Andrew Cazares' prior conviction. (Dkt. 333.)

Long before the collision that caused his death and while he was still a minor, Andrew Cazares was convicted of criminal damage to property. Plaintiffs seek to exclude any mention or

evidence relating to Cazares's prior conviction. Generally, "'the details of the prior conviction should not [be] exposed to the jury.'" *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005) (quoting *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993). Rule of Evidence 404(b) precludes evidence of "other crimes, wrongs, or acts" from being admissible to prove a person's character.

At oral argument, Defendants indicated that they would seek to potentially introduce evidence of the conviction as part of their presentation to the jury regarding damages if they are held liable for Cazares's wrongful death. The Illinois pattern jury instructions for wrongful death allow the jury to consider a number of factors when valuing the loss of the victim's life, including the decedents' physical and mental characteristics, in addition to his habits of industry, sobriety, and thrift. *See Ill. Pattern Jury Instr.-Civ. 31.06*. Defendants submit that one of the factors that Illinois courts permit juries to consider is the decedent's criminal history. This is not evident from the relevant pattern instruction and supporting law. Regardless, even if Illinois courts occasionally permit juries to consider a victim's conviction history when calculating damages, the conviction at issue here occurred when Cazares was a minor, is of limited probative value when evaluating damages, and is highly prejudicial, especially when considering that Cazares's credibility as a witness is not at issue and the evidence would not be used to impeach. As Defendants concede, they would attempt to introduce Cazares's conviction history in order to reveal evidence about his character. Such use of prior convictions is precluded by rule. *See, e.g., Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1088 (N.D. Ill. 2007) (barring evidence of decedent's prior arrests, criminal involvement, and convictions, because prejudicial effect outweighed any probative value and material was not being used to impeach). Plaintiffs' Motion in Limine #7 is granted.

## II.     Frugoli's Motions *in Limine*

### A.     Motion in Limine #1 to bar evidence of fleeing the scene. (Dkt. 312.)

Frugoli seeks to exclude evidence that he fled the scene of the crash, arguing that evidence of his post-accident conduct is irrelevant to the Plaintiffs' claims.  Evidence of fleeing in the analogous context of a criminal defendant fleeing the police, however, is admissible to support an inference of consciousness of guilt.  *See United States v. Ajijola*, 584 F.3d 763, 766 (7th Cir. 2009). Although this evidence may be of limited probity to show guilt, the evidence is highly probative to showing Frugoli's state of mind at the time of crash vis a vis his ability to act with impunity, including whether he believed he could avoid arrest following the collision.  This is relevant to the Plaintiffs' *Monell* claim.  The fact that Frugoli crashed into the decedents' vehicle is not in question and whatever potential prejudicial effect his attempted evasion has is outweighed by its probative value to Plaintiffs' *Monell* claim.   Further, Illinois courts have found evidence of leaving an accident scene to be admissible and relevant because, *inter alia*, it can evidence a "*wilful, wanton, or reckless state of mind*" at the time of the accident.  *Peterson v. Henning*, 116 Ill. App. 3d 305, 308, 452 N.E.2d 135, 138 (1983).

### B.     Motion in Limine # 2 to bar Plaintiffs' Ex. 12, news video of footage of crash scene after the accident. (Dkt. 313.)

Frugoli has moved to exclude the admission of a video taken of the wreckage of the accident by a freelance news cameraperson, arguing that the video has no probative value and that the "video is intended purely to shock the jury and inflame their passion, prejudice and sympathy."  (Dkt 313 at 2.)  "It is well settled that the admission or rejection of photographs lies largely within the discretion of the trial court."  *United States v. Fleming*, 594 F.2d 598, 607 (7th Cir. 1979).  Asserting that discretion, this Court finds that the video is relevant to demonstrating

Plaintiffs' damages, specifically to show the severity of the crash and shed light on the pain and suffering sustained by Plaintiffs. District courts within this circuit have admitted this type of evidence to assist the jury in evaluating damages in wrongful death cases. *See Karahodzic v. JBS Carriers Inc.*, No. 12-CV-1040-DRH, 2015 WL 6754989, at *2 (S.D. Ill. Nov. 5, 2015) (permitting admission of one photograph of accident scene, to assist jury determine damages for wrongful death claim); *Dewick v. Maytag Corp.*, 324 F. Supp. 2d 889, 892 (N.D. Ill. 2004) (denying motion *in limine* seeking to bar photograph depicting Plaintiff's injury and reserving issue for trial, recognizing need to balance "plaintiff's need to show the nature and extent of [the plaintiff's injuries] and of the pain and suffering experienced by [the plaintiff], on the one hand, and the need on the other hand to avoid a gratuitous multiplication of such depictions that might needlessly inflame the jury and skew its deliberations."). Illinois courts have also admitted such evidence in wrongful death suits. *See Drews v. Gobel Freight Lines, Inc.*, 197 Ill. App. 3d 1049, 1059-60, aff'd, 144 Ill. 2d 84 (1991) (affirming admission of photograph of accident scene because it was relevant to "showing the extent of pain and suffering during the 30 minutes decedent was pinned inside the wreckage and again, is a proper exercise of the court's discretion"); *Carter v. Indiana Harbor Belt R. Co.*, 190 Ill. App. 3d 1052, 1060 (1989) (noting that photograph of decedent's injuries was admissible "to depict the existence, nature, severity and location of injuries, and to show resultant pain and suffering."). Frugoli's Motion in Limine #2 is denied.

### C. Motion in Limine # 3 to bar Plaintiffs' Ex. 2, audio recording of crash (Dkt. 314)

Similarly, Frugoli also seeks to exclude a recording of a call from Cazares's phone to one of his friends that recorded audio of the decedents' vehicle shortly after the crash. On the call, which was recorded on the friend's voicemail, someone on Cazares's end of the phone utters the

words "fire," "I can't,"  and an expletive.  During depositions, family members of the decedents identified the decedents' voices as the ones on the call.  Frugoli argues that, like the video, the call's potential for prejudice outweighs its probative value and the call itself, which is muffled could mislead or confuse the jury.  The Court disagrees. Similar to the video evidence discussed above, the audio recording is relevant to demonstrating the pain and suffering that the decedents endured after the crash, and the audio could be used to support the argument that they were conscious after the impact of the collision and died from injuries related to the fire.  This probative value is not outweighed by the danger of undue prejudice, as the recording is not overtly graphic or inclusive of any prolonged screams or utterances of anguish by the decedents. As such, Frugoli's Motion in Limine # 3 is denied.

> **D.**     **Motion in Limine # 4 to bar evidence regarding a criminal sentencing letter. (Dkt. 315.)**

Frugoli has moved to exclude evidence relating to Frugoli's request that his daughter write a letter in support of him for his criminal sentencing.  During argument, Plaintiffs' counsel represented that they did not intend to introduce evidence of the criminal sentencing letter at issue.  As a result, Frugoli's Motion in Limine #4 is granted as moot.

**III.**     **City of Chicago's Motions *in Limine***

> **A.**     **Motion in Limine to bar Plaintiffs from presenting testimony, evidence or argument that the jury should send a message with its verdict. (Dkt. 317)**

The City of Chicago moves to prevent Plaintiffs' counsel from arguing that the jury should send a message with its verdict.  Such argument is only appropriate when punitive damages are at stake, because a request for punitive damages is to "punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct." *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996).  As Plaintiffs concede, punitive damages are not available

against the City and they are not seeking punitive damages against Frugoli. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); 745 ILCS 10/2-201. For these reasons, the motion is granted. *See Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017) (barring plaintiff from arguing that jury should send a message to the City with its verdict where punitive damages were unavailable against City); *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012) (excluding similar argument where plaintiff was could not seek punitive damages against city and did not seek punitive damages against the individual police officer defendant). *Betts v. City of Chicago*, a case invoked by Plaintiffs, supports the exclusion of argument that the jury should send a message with its verdict. 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011). In *Betts*, a district court within this district barred the plaintiff from any "argument that the jury should 'send a message' to the City of Chicago." *Id.* In *Christmas v. City of Chicago*, another case cited by Plaintiffs, without detailed analysis, the district court permitted plaintiffs to ask the jury to send a message to the City by awarding full compensatory damages but they could not imply that they were entitled to punitive damages from the City. 691 F. Supp.2d at 820. Such linguistic acrobatics are unnecessary here and could confuse the jury. Sending a message implies punishment or deterrence and because punitive damages are unavailable here, the Court agrees with the logic imposed by the courts in *Jones*, *Obrycka*, and *Betts*. The City's motion *in limine* to bar Plaintiffs from presenting testimony, evidence or argument that the jury should send a message with its verdict is granted.

**B.     Motion in Limine to bar evidence that any Chicago Police Officer violated any City of Chicago General Order or Policies. (Dkt. 318/364)**

The City of Chicago seeks to exclude evidence that any CPD officer violated any of the CPD's General Orders ("GO") or policies. The City argues that the fact that rules or regulations were violated is irrelevant to establishing a § 1983 claim and has the likelihood of being unduly

prejudicial, as the jury may become confused and equate violations of CPD rules with constitutional violations.

Evidence that police officers, including Frugoli, violated CPD general orders or other police rules and regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights. *United States v. Brown*, No. 16-1603, 2017 WL 3947160, at *3 (7th Cir. Sept. 8, 2017) ("An officer's compliance with or deviation from departmental policy doesn't determine whether he" violated the constitution); *Thompson v. City of Chicago*, 472 F.3d 444, 454-55 (7th Cir. 2006) ("[t]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Indeed, it is well settled that "'§ 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'" *Id.* at 454 (citation omitted). That being said, evidence regarding police policies, including expert testimony, is not per se inadmissible. *Brown*, 2017 WL 3947160, at *4.

In supplemental briefing, Plaintiffs identified thirteen instances in which they wish to introduce evidence of violations of CPD GOs and regulations. In almost all of them, however, Plaintiffs failed to identify why the information is relevant or even admissible. Nevertheless, the Court will address each item below.

Plaintiffs first point to potential testimony by one of the City's expert witnesses, Chief Rivera, who may testify that the City has regulations in place to discipline officers who fail to take action when they observe misconduct. The City disputes Plaintiffs' characterization of Rivera's proposed testimony. Regardless of Rivera's testimony, however, Plaintiffs have not identified any violations of the CPD's general orders that they seek to introduce in relation to

Rivera's testimony.  As such, the Court has no basis to admit that evidence and grants the City's motion *in limine* as to this evidence, without prejudice.

Next, Plaintiffs note that one of their expert witnesses prepared a statistical analysis indicating that a high percentage of complaint registers against CPD officers accused of DUI "have a failure to report DUI."  Plaintiffs then state that because of this statistical analysis, CPD officers routinely ignored GO 9303 B.  While that may or may not be the case, there is no need to reference that general order when making the statistical point that a high percentage of complaints involving CPD officers accused of DUI included a failure to report the DUI. Reference to this general order adds nothing to that point and could confuse or mislead the jury and is therefore excluded.  *Thompson*, 472 F.3d at 454.

In their third attempt to introduce evidence purportedly related to violations of CPD rules and regulations, Plaintiffs' point to the testimony of their witness Ron Forgue, a former CPD officer, but do not reference any CPD general orders being violated.  The Court is unable and unwilling to divine how Forgue's testimony relates to violations of CPD rules. The Court reminds Plaintiffs, however, that it has already precluded Forgue from testifying about specific incidents of retaliation against officers who reported police misconduct.  This extends to specific examples of unrelated violations of police regulations.

Fourth, Plaintiffs propose to introduce a number of CPD general orders apparently violated by Frugoli.  These include a rule requiring police officers to notify their supervisors of any traffic citations, including those for driving while intoxicated (No. 4); rules against being intoxicated or operating a vehicle while intoxicated (No. 5); the requirement that CPD officers must submit a report if under investigation by an outside police department (No. 6); and reporting obligations that Frugoli apparently ignored when he was sued in regards to various car

collisions (No. 9). First, from the face of many of these regulations, it is far from clear that many of them apply to Frugoli. The Court is not aware of any evidence that Frugoli was ever under investigation by an outside law enforcement agency or ever ticketed for DUI. Regardless of their application and even assuming Frugoli violated some or all of these general orders, it is unclear how those rule violations are relevant to Plaintiffs' claims. Plaintiffs have wholly failed to demonstrate their probative value and introduction of these alleged rule violations is in contradiction of *Thompson*, blatantly inadmissible propensity evidence as to Frugoli, and irrelevant to the Plaintiffs' *Monell* claim. As a result, the City's motion is granted as to these general orders.

Several other of the general orders identified by Plaintiffs relate to the duties of CPD officers in various investigative scenarios involving alcohol. These include the duties of supervisors in relation to complaints against an officer driving impaired (No. 10),[1] the requirement that a field lieutenant is required to respond to the scene to determine if the off-duty officer was impaired by alcohol in the event of a CPD officer getting into a crash (No. 11), and discipline for preventable auto crashes (No. 12). Although Plaintiffs have failed to fully articulate how they intend to show violations of these general orders and their relevance, the Court presumes that they would be raised in relation to Sgt. Cotter's handling of Frugoli's January 2008 car accidents. In this context, demonstrating that Cotter did not follow CPD protocol during her investigations, especially with regards to the potential alcohol impairment, is relevant to the code of silence at issue. Evidence of such violations is outside the purview of *Thompson*, as Cotter is not an individual defendant in this case, so the fact that she may have failed to comply with certain general orders has a low probability of confusing the jury as to a

---

[1] As the City points out, there is no evidence that prior to the accident at issue here, Frugoli was ever charged with driving under the influence. As such, it does not appear that the general order governing the duties of supervisors in relation to complaints against an officer driving impaired is applicable.

constitutional violation. Furthermore, unlike *Thompson*, which did not involve a *Monell* claim, the nature of Plaintiffs' claim against the City requires them to demonstrate a widespread practice that necessarily contravened official CPD rules and regulations, and introduction of such evidence has been contemplated by courts within this District when a code of silence is at issue. *See Fairley v. Andrews*, No. 03 C 5207, 2011 WL 2142800, at *5 (N.D. Ill. May 31, 2011) (recognizing that evidence regarding supervisory review, investigations, and disciplining of officers was relevant when code of silence claim was part of lawsuit).

Plaintiffs also indicate that they will seek to introduce Addendum to General Order 93-3, which provides the outline of what is contained in a complaint register, including the meaning of terms such as "unfounded." Although Plaintiffs have failed to explain how they intend to use such information, it appears that they propose to use the general order not to show a violation of it, but rather to provide context to the expert testimony regarding various complaint registers. To the extent the CR evidence is admitted, and assuming Plaintiffs are able to lay proper foundation, Plaintiffs may introduce evidence regarding GO 93-3. Other uses of this evidence, including potential violations of the general order, must be raised with the Court prior to introduction.

Finally, Plaintiffs contend that all of the CPD General Orders and Rules of Conduct produced by the City are appropriate material for cross-examination of any witness. This platitude is not helpful to the Court in assessing the admissibility of evidence. To the extent Plaintiffs intend to use CPD General Orders and Rules of Conduct during cross, they must raise their use of the material with the Court outside the presence of the jury.

**C.      Motion in Limine to bar evidence or testimony regarding Frugoli's prior accidents. (Dkt. 321.)**

The City of Chicago moves, pursuant to Rule of Evidence 404(b), to exclude evidence of Frugoli's prior car accidents, arguing that such evidence would only serve to show his propensity for bad acts.

There is no "mechanical solution" to admitting evidence under 404(b); instead, we consider such evidence under the usual rules for admissibility under Rule 403. *Huddleston v. United States*, 485 U.S. 681, 688 (1988) (citing Advisory Committee's Notes on Fed. R. Evid. 404(b), 28 U.S.C. App., p. 691). The City cites to the four-part test formerly used in this circuit to evaluate the admissibility of other-act evidence which "has ceased to be useful." *United States v. Gomez*, 763 F.3d 845, 850, 852-53 (7th Cir. 2014) (en banc). Instead of applying that test, courts should apply a "straightforward rules-based approach" that "more closely tracks the Federal Rules of Evidence." *Id.* Under this approach, the Court asks "not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* at 856; *see also United States v. Walter*, 2017 WL 3711744, Nos. 16-1209 & 16-1325 at *4 (7th Cir. Aug. 29, 2017). If this showing is met, we then must "assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice," and if the risk is too great then the courts may exclude the evidence under Rule 403. *Id.* at 860; *United States v. Mabie*, 862 F.3d 624, 632-33 (7th Cir. 2017).

At issue are four of Frugoli's prior accidents, one from 2005, two that occurred in January 2008, and one from March 2009. Although Frugoli's 2005 accident undisputedly involved alcohol, it has no probative value at trial, as there is no evidence that the CPD was ever

informed of the accident. As it has no relevance to the Plaintiffs' *Monell* claim against the City, it has even less relevance to the Plaintiffs' wrongful death claim against Frugoli and would only serve to confuse or mislead the jury. Plaintiffs also seek to introduce evidence about a crash involving Frugoli that was not raised in summary judgment briefing, which took place in March 2009, shortly before the fatal accident at issue. At oral argument, Plaintiffs' counsel indicated that the investigation into the March 2009 crash was handled by the Illinois State Police and there is no indication that the CPD played any role in the investigation or that the City even became aware of the accident. As such, and similar to Frugoli's 2005 accident, there is no relevance between Frugoli's March 2009 accident and the alleged code of silence at issue in this matter. It also has no relevance to Plaintiffs' claims against Frugoli. For this reason, evidence of Frugoli's 2005 and 2009 crashes are irrelevant and have the potential to confuse or prejudice the jury. Evidence relating to these accidents is therefore excluded under Rules 401, 403, and 404(b).

That leaves Frugoli's two car accidents from January 2008. Both accidents took place just over a year before the accident at issue, and within a day of each other. The first of these accidents was a single-car accident involving Frugoli's police-issued vehicle. The second of the January 2008 accidents involved Frugoli going through a stop sign and striking a CPD police cruiser. Both accidents occurred in the very early morning hours, both were investigated by Sgt. Cotter of the CPD, and Frugoli has denied drinking before both accidents.

The Court has already determined that these accidents, especially the CPD's investigation into these accidents, are relevant to Plaintiffs' *Monell* claim, an admissible propensity-free chain of reasoning. In its summary judgment ruling, this Court found that the "lack of investigation by Sgt. Smith-Cotter into Frugoli's two early morning accidents in 2008, and especially her conduct

as it related to the second accident, could also support the conclusion that Frugoli believed he could drink and drive with impunity." In that accident, Frugoli appeared glassy-eyed, failed to assist the injured officers, did not call for help, and did not even check on the officers' condition. When the Sergeant arrived on scene, Frugoli was placed in her squad car, he did not undergo any tests to determine if he was impaired, other police investigators were not able to speak to Frugoli, the Sergeant drove Frugoli home, and the victim-officers were not informed of any court date. Here, evidence of Frugoli's two accidents from January 2008 would not be used to show that he had a propensity to be in car accidents, or even a propensity to drive under the influence of alcohol, but rather to demonstrate that under circumstances that warranted a fulsome investigation, the CPD failed to perform an adequate investigate, which is probative of the code of silence at issue in this case. Sgt. Cotter's response to Frugoli's January 2008 accidents could serve to not only bolster the existence of a code of silence but also to support the causal link between the code and Frugoli's decision to drink and drive on April 10, 2009. Lou Reiter, one of the Plaintiffs' experts, relied upon these incidents and found that the cursory investigation into January 28, 2008 accident evidences CPD's code of silence.

The City likens Frugoli's prior car accidents to incidents of prior violent acts by Anthony Abbate, the police officer defendant in the *Obrycka* case. The district court in *Obrycka* excluded evidence of Abbate's prior violent acts because the acts were of limited probative value and the danger of unfair prejudice was high, as the jury could use the evidence of Abbate's prior violence to conclude that Abbate was a bad person. The court's ruling in *Obrycka* is distinguishable from Frugoli's prior car accidents. First, the court in *Obrycka* found the evidence of Abbate's violence to be of limited probative value, whereas here, Frugoli's 2008 accidents, especially the CPD investigations into those accidents, are highly relevant to Plaintiffs' *Monell*

claim, independent of any propensity chain of inference.    Second, unlike the violent acts at issue in *Obrycka* ,which had the obvious potential to inflame the passions of a jury, the fact that Frugoli was in two car accidents is unlikely to similarly unduly prejudice the jury.

**D.**    **Motion in Limine to bar Plaintiffs from creating adverse trial publicity against Defendants. (Dkt 325.)**

The City of Chicago seeks to bar Plaintiffs from creating adverse trial publicity against Defendants—essentially a gag order that would prospectively bar the Plaintiffs from discussing their opinions regarding the case or from disseminating adverse or purportedly inflammatory information about the trial.    Limiting or penalizing "future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation."    *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009).    Defendants have failed to provide any reason that would justify imposing of such an order.    *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976).    Further, Plaintiffs' counsel has represented that they will not approach the media about the matter or otherwise create adverse publicity but that if sought out by the media they would respond.    Recognizing the important First Amendment issues involved and considering that Plaintiffs have represented that they will not generate adverse publicity, the Court denies the City's motion.    *Nebraska Press Ass'n*, 427 U.S. at 558. (finding that imposition of judicial gag intended to protect defendant's right to a fair trial order by prohibiting publishing certain information relating to trial was an invalid prior retraint); *see also In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *19 (S.D. Ill. Dec. 22, 2011) (declining to order party not to engage in pretrial publicity when moving party had failed to identify any offending examples and noting that "prior restraint of First Amendment rights is very serious").

### E. Motion in Limine to bar unrelated citizen complaints and lawsuits. (Dkt. 326/363)

Finally, the City of Chicago seeks to bar Plaintiffs from introducing evidence regarding unrelated lawsuits where Frugoli was named as a defendant along with evidence related to a number of unsustained complaint registers filed by citizens against Frugoli. The City argues that such evidence is prohibited by Rule 404(b) and is unduly prejudicial.

The Court lacks detailed information about the lawsuits involving Frugoli that Plaintiffs seek to introduce and Plaintiffs also failed to address the issue of the lawsuits at oral argument or in their response brief. Because there is no reason to believe that evidence of unrelated lawsuits are germane to Plaintiffs' claims, and given that the evidence would likely be unduly prejudicial and could confuse the jury, the City's motion is granted as to the lawsuits. *See, e.g.*, *Miller v. Polaris Labs., LLC*, No. 111CV01004TWPDML, 2016 WL 1639087, at *2 (S.D. Ind. Apr. 26, 2016) (excluding evidence of unrelated lawsuits against defendants as unfairly prejudicial, irrelevant, and that it would cause undue delay); *Shea v. Galaxie Lumber & Const. Co.*, No. 94 C 906, 1996 WL 111890, at *1 (N.D. Ill. Mar. 12, 1996) (excluding evidence of unrelated lawsuits against defendant under Rules 404(b) and 403).

In moving to exclude evidence of eighteen unsustained civilian complaints against Frugoli, the City argues that accusations against a defendant that did not result in a finding are generally inadmissible. (Dkt. 326 at 3, citing *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496 (1988).) That general statement of law is true when a party attempts to show that the charged conduct demonstrates conformity with prior bad acts. In that circumstance, the fact that an allegation is not sustained lessens its probative value. (*See* Dkt. 326 at 3, citing *Berkovich v. Hicks*, 922 F.2d 1018, 1021 (2d Cir. 1991) (finding that civilian complaints were inadmissible to show that officer had propensity to act in similar way)). Here on the other hand, the fact that

none of the complaints against Frugoli were sustained strengthens their probative value, as it could be evidence of the City's failure to investigate and discipline its own officers as part of the relevant code of silence. Additionally, Lou Reiter, one of Plaintiffs' experts, relied upon the fact that none of the complaints resulted in any corrective actions as evidence of the attendant code of silence.

Even though the complaints are relevant without relying on a "propensity inference," they may still be excluded if they run afoul of Rule 403. *Gomez*, 763 F.3d at 856-57. The Court, however, is not in a position at this time to make a determination of whether the unstained complaints against Frugoli are unduly prejudicial or have a high probability of confusing the jury. That is because in its motion *in limine* and at oral argument, the City failed to provide details of why the various complaints are prejudicial outside of their existence. As such, the Court is unable to evaluate the potential prejudicial effect that they could have. Therefore, the Court will deny the City's motion without prejudice and provide the City an additional opportunity to specifically address why each of the complaints should be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motions in Limine #2 – to bar testimony or reference to alcohol use by Andrew Cazares or Fausto Manzera (Dkt. 328) is denied, Plaintifs' Motion in Limine #3– to bar testimony or reference to contributory negligence by plaintiffs (Dkt. 329) is denied, and its Motion in Limine #5– to bar the City from arguing that a code of silence does not exist with the CPD (Dkt. 331) is denied. Plaintiffs' Motion in Limine #7 – to bar testimony of or reference to, by argument or otherwise, regarding decedents' prior police contact and Andrew Cazares' prior conviction (Dkt. 333) is granted. Frugoli's Motions in Limine No. 1 to bar evidence of fleeing the scene (Dkt. 312) is denied, his Motion in Limine No. 2 to bar

Plaintiffs' Ex. 12, news video of footage of crash scene after the accident (Dkt. 313) is denied, as is his Motion in Limine No. 3 to bar Plaintiffs' Ex. 2, audio recording of crash (Dkt. 314). Frugoli's Motion in Limine No. 4 to bar evidence regarding a criminal sentencing letter (Dkt. 315) is granted as moot. The City of Chicago's Motion in Limine to bar Plaintiffs from presenting testimony, evidence or argument that the jury should send a message with its verdict (Dkt. 317) is granted, its Motion in Limine to bar evidence that any Chicago Police Officer violated any City of Chicago General Order or Policies (Dkt. 318) is granted in part and denied in part, its Motion in Limine to bar evidence or testimony regarding Frugoli's prior accidents (Dkt. 321) is granted in part and denied in part, its Motion in Limine to bar Plaintiffs from creating adverse trial publicity against Defendants (Dkt. 325) is denied, and its Motion in Limine to bar unrelated citizen complaints and lawsuits (Dkt. 326) is granted in part and denied in part.

Hon. Virginia M. Kendall
United States District Judge

Date: September 19, 2017