**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE ANDRES CAZARES, as Special Administrator of the Estate of ANDREW CAZARES, deceased and<br><br>FAUSTO T. MANZERA, as Special Administrator of the Estate of FAUSTO A. MANZERA, et al.,<br>Plaintiffs,<br><br>v.<br><br>JOSEPH FRUGOLI, et al.,<br><br>Defendants. | ) | Case No. 13 C 5626<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

As detailed in several of the Court's prior rulings, Andrew Cazares and Fausto A. Manzera died after their disabled vehicle was struck by an SUV driven by Defendant Joseph Frugoli, an intoxicated off-duty Chicago police officer. Plaintiffs Jose Cazares and Fausto T. Manzera as special administrators of the estates of Andrew Cazares and Fausto A. Manzera, sued Frugoli and his employer, the City of Chicago (the "City").[1] On March 31, 2017, the Court denied the City's motion for summary judgment on Plaintiffs' *Monell*[2] claims—the only claims brought against it. *See* (Dkt. 352); *see also Cazares v. Frugoli*, 2017 WL 1196978 (N.D. Ill. Mar. 31, 2017). Currently before the Court is the City's motion to reconsider the Court's summary judgment order. *See* (Dkt. 396). For the reasons explained below, the City's motion (Dkt. 396) is denied. The case remains set for trial beginning on November 27, 2017 at 9:30 a.m.

---

[1] Plaintiffs also brought state law Dram Shop Act, 235 ILCS 5/6-21, claims against John R. Morgan; Primero, Inc., d/b/a Dugan's; and Metropolitan Bank Land Trust 1463, which later were dismissed. *See* (Dkt. 339).

[2] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

## LEGAL STANDARD

Because the Court's March 31, 2017 Memorandum Opinion and Order did not dispose of this case, the Court reviews the City's reconsideration motion under Federal Rule of Civil Procedure 54(b).[3] Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, the Court has the "discretionary authority" to reconsider an interlocutory order. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *see also Chicago Reg'l Council of Carpenters v. Prate Installations, Inc.*, 2011 WL 2469820, at *1 (N.D. Ill. June 20, 2011) ("under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because the Court may revise such orders at any time before entering final judgment") (*citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)). But a motion to reconsider is not a proper vehicle for rehashing arguments that the Court previously rejected or for introducing new legal theories. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see, e.g.*, *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015). Instead, motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact or to presenting newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015). A manifest error of law or fact under this standard occurs "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501–02 (7th Cir. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*,

[3] Accordingly, Plaintiffs' arguments concerning the timeliness of the City's motion under Federal Rule of Civil Procedure 59(e) are misplaced. Rule 59(e) provides a mechanism for altering or amending a *judgment* and is therefore inapplicable to interlocutory orders, like the denial of summary judgment. *See Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

906 F.2d 1185, 1191 (7th Cir. 1990)). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## ANALYSIS

The City's only argument on reconsideration is that a significant change in the law, namely the Seventh Circuit's recent decision in *Wilson-Trattner v. Campbell*, 863 F.3d 589 (7th Cir. 2017), undermines the Court's prior ruling and warrants a grant of summary judgment in its favor.

### A. The March 31, 2017 Memorandum Opinion and Order

Before considering this argument, the Court briefly reviews the underlying memorandum opinion. The full background of this case is set forth in the Court's March 31, 2017 Memorandum Opinion and Order, knowledge of which is assumed here. *See* (Dkt. 352). In brief, on April 10, 2009, an intoxicated Frugoli caused a car accident on the Dan Ryan Expressway, killing Cazares and Manzera. Plaintiffs brought *Monell* claims against the City, alleging that it violated the decedents' substantive due process right to bodily integrity through the City's pervasive *de facto* policies, practices, and/or customs (that is, the Chicago Police Department's "code of silence" and the Department's failure to properly investigate and impose discipline for potential misconduct by its police officers, including Frugoli). Plaintiffs allege that the *de facto* policies, practices, and/or customs encouraged Frugoli to drive under the influence without fear of official consequence, proximately causing the tragic collision that resulted in Cazares' and Manzera's deaths. *See* (Dkt. 86 at 6–12); (Dkt. 87 at 6–11).

The City moved for summary judgment (Dkt. 284), arguing as relevant that Frugoli, who was off duty at the time of the accident, was acting as a private citizen—that is, he was not acting

under color of law. *See* (Dkt. 286 at 3). Therefore, according to the City, it did not have any affirmative duty to protect the decedents because "the 14th Amendment does not require the government to prevent citizens from harming each other." *Id*. at 5 (citing *Stevens v. Umsted*, 131F.3d 697, 701 (7th Cir. 1997)). The City relied on *DeShaney v. Winnebago County Dep't. of Social Servs.*, 489 U.S. 189, 195 (1989) and its progeny in support of this argument. *See id.* 4–9.

The Court rejected the City's argument, explaining that *DeShaney* is not the appropriate legal framework with which to analyze Plaintiff's *Monell* claims, which allege that the City's *de facto* policies caused the complained-of harm, not that the City failed to protect the decedents from Frugoli's private harm. *See* (Dkt. 352 at 31–34). In other words, the Court explained that the City's focus on Frugoli's duty status at the time of the accident was misplaced because Plaintiff's claims allege that it was the *City* that was the state actor. Accordingly, *DeShaney*'s holding that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors" is inapplicable. *Id*. at 32, 34. The Court explained:

> Not surprisingly, due to *DeShaney*'s focus on "private" harm, most of the cases cited by the City in support of their *DeShaney* argument involve allegations that a municipal body failed to protect a citizen from harm by a non-state actor. Unlike the Plaintiffs' allegations here, these cases do not involve allegations that a municipal policy *affirmatively* caused the constitutional deprivation. . . . In the instant case, Plaintiffs do not seek compensation under *Monell* because the City failed to protect the decedents from Frugoli. Instead, they argue that the City's *de facto* policies, including the code of silence, caused the decedents' constitutional injury. Such claims are assessed under the *Monell* framework because the harm was caused by the City, which by its very nature fulfills the "under color of law" requirement.

*Id*. at 33–34 (emphasis added) (internal citation omitted). The Court further reasoned in dicta that even if *DeShaney* were to apply, triable issues existed regarding whether the "state created

danger exception"[4] to that holding applies here, where "on-duty police officers on several occasions ignored or otherwise failed to respond to incidents in which a jury could find that Frugoli drove drunk, subsequently damaging property or injuring others." *Id*. at 34.

**B. The City's Motion to Reconsider**

The City argues that the Court should reconsider its summary judgment ruling based on the decision in *Wilson-Trattner v. Campbell*, 863 F.3d 589 (7th Cir. 2017). There, the plaintiff was in an abusive relationship with Hancock County, Indiana police officer Scott Roeger. *Wilson-Trattner*, 863 F.3d at 591. On four occasions, police officers were called to respond to incidents between the plaintiff and Roeger, but the Hancock County Sheriff's Department, which had issued verbal reprimands and/or counseling following the events and had generated investigative reports on a few of the occasions, declined to discipline or arrest Roeger until after the last, most severe incident. The plaintiff brought suit against four individual officers, Roeger, Hancock County, and the Sheriff's Department. The claims against the county and the Sheriff's Department were voluntarily dismissed. *See id.* at 593 n.2. As relevant to the City's motion for reconsideration in this case, at summary judgment, the district court addressed the following claims: (1) a § 1983 substantive due process claim (against the four individual officers in their individual and official capacities) and (2) a § 1983 failure to train claim (against the Sheriff in his official capacity). *Id.* at 593.

The district court granted summary judgment on the plaintiff's individual-capacity claim under the *DeShaney* framework, since the plaintiff had argued that the officers, through their inaction, had "violated her substantive due process right to be free from a state-created danger,"

[4] Under the state-created danger doctrine, a plaintiff is required to prove "(1) the state created or increased a danger to him, (2) the state's failure to protect plaintiff was a proximate cause of his injuries, and (3) the state's failure to protect the individual shocks the conscience." *Wilson v. Warren County, Ill.*, 830 F.3d 464, 469–70 (7th Cir. 2016) (citing *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–18 (7th Cir. 2007)).

that is, Roeger's abuse. *Wilson-Trattner v. Campbell*, 2016 WL 2894444, at *5–6 (S.D. Ind. May 18, 2016). With regard to the official capacity claims, which the district court interpreted to be failure to train and failure "to implement protocols for handling officers accused of domestic violence," the district court granted summary judgment because (1) it had already found in its individual-capacity analysis that the plaintiff failed to establish an constitutional violation based on inaction, and (2) even if she had established a violation, the plaintiff was unable to demonstrate that the Sheriff was deliberately indifferent to the need to have a policy regarding for employees who committed misconduct, particularly in light of the few actions that were taken after the Department learned of the incidents. *Id*. at *7.

On appeal, the plaintiff confirmed that her substantive due process claim implicated the *DeShaney* state-created-danger exception because she conceded that Roeger was not serving as a state actor in his interactions with her. *Wilson-Trattner*, 863 F.3d at 593. Thus, the plaintiff argued that the officers' inaction "'conveyed the unmistakable message' to Roeger that they would not interfere with his on-going abuse, thereby emboldening him to reoffend." *Id*. On this groundwork, the Seventh Circuit affirmed the dismissal of the individual-capacity claims. Specifically, the court found that the Plaintiff had failed to establish the state-created-danger exception because she had failed to demonstrate that the officers affirmatively did anything to embolden Roeger or otherwise indicate that he could abuse her with impunity. *Id*. at 594. In addition, the Seventh Circuit rejected Plaintiff's argument that the officers' "dismissive and indifferent attitudes" fulfilled this element of the exception. *Id*. "Mere indifference or inaction in the face of private violence cannot support a substantive due process claim under *DeShaney* and [*Town of*] *Castle Rock* [*v. Gonzales*, 545 U.S. 748 (2005)]. Further, Wilson-Trattner's theory that Hancock County officers increased a danger to her by implicitly condoning violence

against her is both questionable in light of *DeShaney* and *Castle Rock* and unsupported by the facts." *Id*. at 595. The appeals court also succinctly affirmed the district court's decision on the plaintiff's failure-to-train claim. *Id*. at 596.

The Court is not persuaded by the City's argument that *Wilson-Trattner* constitutes a change in the law that requires a different result in this case. As an initial matter, the City misstates *Wilson-Trattner*. According to the City, *Wilson-Trattner* "established that a *de facto* policy of failing to discipline officers for off-duty misconduct does not constitute a violation of the due process clause under the stated-created danger doctrine." *See* (Dkt. 396 at 5); *see also id.* (*Wilson-Trattner* "found that a municipal policy for failing to discipline or intervene with the off-duty actions of its deputy fell squarely within the *DeShaney* analysis and its progeny"). To be clear, the *Wilson-Trattner* district court addressed official-capacity claims alleging the failure to train Hancock County employees and the failure "to implement protocols for handling officers accused of domestic abuse." *Wilson-Trattner*, 2016 WL 2894444, at *7; *see Wilson-Trattner*, 863 F.3d at 596 (only mentioning the failure-to-train claim). Moreover, *Wilson-Trattner* did not mandate that *DeShaney* applies to a certain category of municipal liability claims or even perform an extended analysis of the policy—or lack of policy—claims at issue there, as the City seems to suggest. Instead, the district court determined that the individual officers had not violated any constitutional right of the plaintiff under *DeShaney* and then dismissed the failure to train and lack of policy official-capacity claims after a brief analysis mentioning (1) the lack of a constitutional violation under the individual-capacity analysis and (2) the lack of evidence as to a widespread or systematic policy so as to assess municipal liability. *Wilson-Trattner*, 2016 WL 2894444, at *7. The Seventh Circuit made little of this analysis, stating briefly that it agreed "with the district court's resolution of the Plaintiff's failure to train" claim because it "cannot

proceed without evidence of an underlying constitutional violation." *Wilson-Trattner*, 863 F.3d at 596. Accordingly, the City overstates the particular detail and characteristics of the Seventh Circuit's decision on the official-capacity claims.

In any event, the City errs in its application of *Wilson-Trattner* to the instant case. *Wilson-Trattner* did not, as the City suggests, "specifically address a municipal practice" analogous to the practice challenged here. Again, in *Wilson-Trattner* the plaintiff challenged the adequacy of officers' response to her repeated complaints of domestic abuse at the hands of Roeger in part through her municipal claims for failure to train and lack of policy. Put differently, the Plaintiff complained about the lack of state response to her complaints of private harm. This is well-tread *DeShaney* territory that does not deviate from the Court's earlier analysis of this issue. *See* (Dkt. 352 at 32) ("*DeShaney* and its progeny primarily involve cases where the plaintiff alleges that the state failed to protect him from harm from a non-state actor."); *see also, e.g.*, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992) (citing *DeShaney* in rejecting claim that a city failed "to provide its employees with certain minimal levels of safety and security" and "to warn them about known risks of harm."); *Stevens*, 131 F.3d at 701 (discussing *DeShaney* in rejecting claims against school administrator for failure to adhere to a purported "duty to protect" a student).

As the Court already has explained, *DeShaney* and its progeny—which now includes *Wilson-Trattner*—are inapplicable to this case. Unlike those cases, Plaintiffs here do not allege that the City failed to protect the decedents from a "private" harm. Instead, they allege that the City's policies, including the code of silence, *affirmatively* caused the constitutional deprivation, meaning that the case involves state harm. Although the City's argues that *Wilson-Trattner* involved allegations that a municipal policy affirmatively caused a constitutional deprivation

(Dkt. 396 at 4–5), the facts of that case easily refute that assertion; the plaintiff there admitted that she was complaining about the state's failure to protect her from private harm. *Wilson-Trattner*, 863 F.3d at 595 (involving "[m]ere indifference or inaction in the face of private violence"). Accordingly, the *Wilson-Trattner* decision neither deviates from the long line of cases applying *DeShaney* to allegations of the failure of a state actor (individual or municipal) to protect from a private harm nor alters the analysis of Plaintiffs' *Monell* claims. *DeShaney* remains inapplicable here.

Because *Wilson-Trattner* did not alter the legal framework of this case, the City's reconsideration briefing, which continues to advocate for the application of *DeShaney* and to dispute whether Plaintiffs have adequately established action taken by a state actor, among other things, rehashes the City's summary judgment arguments and therefore does not set forth proper bases for reconsideration. Likewise, the City's argument that "[i]f Plaintiffs' *Monell* claims, as articulated, were to prevail, it would broaden the application of *Monell* to impose virtual strict liability on municipalities for any actions of its off-duty employees" (Dkt. 404 at 4) is a mere disagreement with the Court's summary judgment ruling. Not only that, this argument is nothing more than a red herring, as it completely ignores the high burden on Plaintiff's under *Monell* to prove the existence of a policy or custom that caused a constitutional violation. *See generally* (Dkt. 352 at 36–45) (analyzing the elements of Plaintiffs' *Monell* claims).

In sum, The Seventh Circuit's decision in *Wilson-Trattner* does not disturb the Court's conclusion that *DeShaney* is not the appropriate legal framework with which to analyze Plaintiff's *Monell* claims here. None of the City's arguments demonstrate that a significant change in the law has occurred or that the Court committed a manifest error of law or fact.

## CONCLUSION

For the reasons stated above, the City's motion to reconsider (Dkt. 396) is denied. The case remains set for trial beginning on November 27, 2017 at 9:30 a.m.

Hon. Virginia M. Kendall
United States District Judge

Date: October 11, 2017