IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE ANDRES CAZARES, as Special Administrator of the Estate of ANDREW CAZARES, deceased, | ) ) ) ) | |
| Plaintiff, | ) | No.: 13-cv-05626 |
| v. | ) ) | Honorable Judge Kendall |
| JOSEPH FRUGOLI, JOHN R. MORAN, PRIMERO, INC., an Illinois Corporation, METROPOLITAN BANK LAND TRUST 1463, and CITY OF CHICAGO, a municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| FAUSTO T. MANZERA, as Special Administrator of the Estate of FAUSTO A. MANZERA, deceased, and MARIA VALEZ, as Co-Special Administrator of the Estate of FAUSTO A. MANZERA, deceased. | ) ) ) ) ) ) | |
| Plaintiff, | ) | No.: 13-cv-05626 |
| v. | ) ) | Honorable Judge Kendall |
| JOSEPH FRUGOLI, JOHN R. MORAN, PRIMERO, INC., an Illinois Corporation, METROPOLITAN BANK LAND TRUST 1463, and CITY OF CHICAGO, a municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION FOR DIRECTED VERDICT**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Dykema Gossett, PLLC, pursuant to Federal Rule of Civil Procedure 50(a), hereby moves for judgment as a matter of law in favor of the City and against plaintiffs. In support thereof, the City states:

**INTRODUCTION**

The City is entitled to a judgment as a matter of law on plaintiffs' claims pending before the jury. In accordance with Federal Rule of Civil Procedure 50(a), no reasonable jury would have a legally sufficient evidentiary basis to find in favor of plaintiffs given the lack of evidence presented in plaintiffs' case in chief. The Constitution only protects the rights of those injured at the hands of state employees acting under color of law. Here, Joseph Frugoli was undisputedly not acting under color of law at the time of the automobile crash and the City did not owe any duty to protect plaintiffs' decedents. Accordingly, the evidence does not support a constitutional cause of action for decedents' injuries.

Plaintiffs also have failed to prove a constitutional violation to support their claim against the City. In addition, plaintiffs have failed to introduce evidence sufficient to establish the existence of a *de facto* policy that protected police officers who were involved in alcohol-related incidents. Plaintiffs also failed to prove, and no reasonable jury could conclude, that a *de facto* policy (*i.e.* the code of silence) was the moving force behind a constitutional violation, or that the City was deliberately indifferent to it. Therefore, the City is entitled to a directed verdict in its favor.

**STANDARD**

A judgment may be entered as a matter of law if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on an issue. Fed. R. Civ. P. 50(a). The evidence must be viewed in the light most favorable to the non-moving party and the Court must determine whether the evidence is sufficient to sustain a verdict in favor of the non-moving party. *Hammond Group, Ltd. v. Spalding & Evenflo Companies, Inc.*, 69 F.3d 845, 848 (7th Cir. 1995). To avoid a directed verdict, "plaintiff must offer substantial affirmative evidence to support [their] argument."

2

*Florek v. Village of Mundelein*, 649 F.3d 594, 601 (7th Cir. 2011), quoting *Heft v. Moore*, 351 F.3d 278, 284 (7th Cir. 2003).

## ARGUMENT

### A. Plaintiffs failed to prove the City deprived Plaintiffs' decedents of their Fourteenth Amendment substantive due process right to bodily integrity because the City is not liable for conduct of a private actor.

To prevail on a section 1983 claim, a plaintiff must establish by a preponderance of the evidence "(1) [that] plaintiff's harm was caused by a constitutional violation, and (2) if so, [that] the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Here, plaintiffs claim that Frugoli violated their decedents' Fourteenth Amendment substantive due process right to bodily integrity when he crashed into their vehicle, fatally injuring them. But it has been undisputed at trial (and throughout this litigation) that Frugoli – who was off duty, who was not acting as a police officer, who was not conducting any police business, and who was driving his own personal vehicle – was not acting under color of law and was not a state actor at the time of the fatal collision. As a matter of law, then, Frugoli was a private actor, and his actions therefore cannot have violated the Constitution. And without an underlying constitutional violation, the City is not liable.

The Supreme Court has "emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845-6 (1998) (internal citation omitted) (emphasis added); *accord Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 937 (1982) (only conduct "that may be fairly characterized as 'state action'" can violate Fourteenth Amendment; for liability, person inflicting injury must be "a person who may fairly be said to be a state actor"). Due process protects against "the exercise of power without any reasonable justification in the service of a legitimate

3

governmental objective." *Id*. The Supreme Court recognized a substantive due process right to bodily integrity in *Rochin v. California*, 342 U.S. 165 (1952), where the plaintiff alleged "conscience shocking" behavior, namely, having a criminal suspect's stomach pumped for evidence, by a police officer who was acting under color of law. *Id*. at 172. Plaintiffs failed to prove such a violation here. *Monell* liability is contingent upon an underlying constitutional violation *caused* by a municipality's employee, as so succinctly put in *Heller* - "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that [municipal wrongdoing is also alleged]… is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curium*).

In this case, plaintiffs' theory of liability under *Monell* was that although Frugoli was not acting under color of law, he injured plaintiffs' decedents because the City had a *de facto* policy of encouraging CPD officers to drive under the influence of alcohol. *See* Mem. Op. & Order, Dkt. #352, at 30. But without evidence that the person inflicting the injury was acting under color of law or was a state actor, there is no constitutional violation and the government is not liable. That is because the Constitution does not require the government to protect individuals from harm inflicted by private actors. As the Supreme Court held in *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1988), "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id*. at 195. *DeShaney* involved a *Monell* claim against Winnebago County; as the Court explained, because plaintiff's underlying claims arose from acts of private violence by Joshua DeShaney's father, they did not implicate due process and the Court "ha[d] no occasion to consider . . . whether the allegations in the complaint are sufficient to support a §1983 claim against the county and DSS [Department of Social Services] under

4

*Monell*." *Id*. at 202 n.10. In other words, because the act that harmed Joshua was private violence, there was no basis to hold the county liable, regardless of whether the county and its DSS had a municipal policy that caused his injuries. *DeShaney* thus illustrates that a plaintiff who cannot show that the actor violated the Constitution likewise cannot hold a local government liable for the actor's conduct. *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) ("[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that [municipal wrongdoing is also alleged] . . . is quite beside the point"); *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ( "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action"); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 164 (1978) (rejecting notion that a private party's "action is properly attributable to the State because the State has authorized and encouraged it").

*Wilson-Trattner v. Campbell*, 863 F.3d 589 (7th Cir. 2017), further demonstrates these principles. There, the Seventh Circuit rejected section 1983 claims against a county officer and his superiors because the officer committed only acts of private violence against the plaintiff. *See id*. at 595. The court explained, citing *DeShaney*, that "[m]ere indifference or inaction" by a law enforcement agency when faced with acts of misconduct by one of its employees while off duty and otherwise not acting under color of law could not support the imposition of liability; and that was true even if that indifference or inaction emboldened the employee to engage in acts of violence that injured the plaintiff. *Id*. at 594-96. Among the claims the Seventh Circuit considered and rejected in *Wilson-Trattner* was a failure-to-train claim, which was brought against the county sheriff in his official capacity, *see id*. at 591, 593, and an official capacity claim is in effect a claim against the local government itself, *see Walker v. Sheahan*, 526 F.3d

5

973, 977 (7th Cir. 2008). In other words, the Seventh Circuit was presented with and rejected the plaintiff's effort to hold the local government liable based on its policies and practices because the plaintiff could not show that the government officer who injured her was a state actor. The court did so notwithstanding the fact that the plaintiff had argued, similar to the theory here, that a practice of ignoring allegations of misconduct emboldened the officer to abuse the plaintiff. *See Wilson-Trattner*, 863 F.3d at 596. Indeed, in dismissing this claim, the district court in *Wilson-Trattner* expressly ruled that it failed because *Monell* liability requires a showing that a municipal policy caused the deprivation of a constitutional right, and "[h]ere . . . there was no constitutional violation." *Wilson-Trattner v. Campbell*, 2016 WL 2894444, *7 (S.D. Ind. May, 18, 2016).

The holding of *Wilson-Trattner* is consistent not only with *DeShaney*, but with a long line of authority from the Seventh Circuit and elsewhere. *See Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001) (*Monell* claim alleging municipal inaction toward unlawful activity by off-duty officers properly dismissed after finding the off-duty drunk driving officer was not acting under color of law); *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007); *Alexander v. South Bend*, 433 F.3d 550, 557 (7th Cir. 2006); *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 283 (7th Cir. 1986) (*Monell* "involve[s] the nature of the duty owed and the degree of causation required in a Section 1983 case against a governmental entity rather than the state action requirement of Section 1983"); *see also Doe ex rel. Magee v. Covington County School District ex rel. Keyes*, 675 F.3d 849 (5th Cir. 2012) (en banc); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

6

Applying these principles here, the City is entitled to judgment as a matter of law. At all times during the events of April 10, 2009, Frugoli was a purely private actor, not acting under color of law. He was engaged in private pursuits associated with a night out drinking, and was driving his personal vehicle at the time of the collision. Thus, any injury he inflicted on plaintiffs' decedents is not a constitutional violation because it was not state action. The evidence that Frugoli was an off-duty police officer when the accident occurred is irrelevant: it is undisputed Frugoli did nothing to cloak himself in government authority and was not carrying out his official duties. Plaintiffs' failure to prove the first criteria under *Monell* warrants a directed verdict in favor of the City.

### B. No reasonable jury could conclude liability extends to the City based upon a "*de facto*" policy.

Plaintiffs also have not presented a legally sufficient evidentiary basis to allow a reasonable jury to conclude that liability extends to the City based on a "*de facto*" policy. Plaintiffs proceeded at trial under a "widespread practice" theory, *i.e.*, "a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy." *Rossi v. City of Chicago*, 790 F.3d 792, 737 (7th Cir. 2015). The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively turns into *respondeat* liability. *See Board of County Commr's of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). A "*de facto*" policy theory requires evidence that the practice is widespread and that the specific violations complained of were not isolated incidents. *Jackson v. Marion Cty,* 66 F.3d 151, 152 (7th Cir. 1995); *see also Gill v City of Milwaukee,* 850 F.3d 335, 344 (7th Cir. 2017).

At trial, plaintiffs have suggested liability under a range of possible theories: (1) the code of silence that protects officers who are involved in alcohol-related incidents; (2) failure to

discipline; (3) failure to investigate; and (4) failure to terminate. (Plaintiff Cazares' Opening Statement, 11/28/17, AM, 44: 5-8). While plaintiffs' opening statements may have referenced these four possible theories, their case-in-chief focused on the City's alleged general code of silence.[1] But as this Court emphasized on more than one occasion:

> [T]o succeed on their *Monell* claim, Plaintiffs must demonstrate the existence of a code of silence that protects officers who are involved in alcohol-related incidents and must demonstrate that that specific code of silence caused the decedents' constitutional deprivation.

Mem. Op. & Order, Dkt. #405, at 6 (emphasis added); *see also* Mem. Op. & Order, Dkt. #352, at 38. Based on the evidence presented, plaintiffs have failed to establish this specific "policy."

Plaintiffs' reliance on general code of silence evidence failed to establish a specific code of silence that protects officers who are involved in alcohol-related incidents. Plaintiffs' own experts supported the City's defense that it investigates and disciplines its officers for alcohol-related events resulting in high percentages of sustained rates. Plaintiffs' statistical expert, Kristi Allgood, testified that 82 percent of alcohol-related complaint registers were sustained. (Allgood, 11/28/17, PM, at 58: 21-23). Ms. Allgood agreed 82 percent was a "pretty high number." *Id.* at 59: 3-4. Similarly, plaintiffs' police practices' expert, Lou Reiter, testified the City's written policies and procedures are consistent with generally accepted practices and further explained the policies and procedures are "very good, very comprehensive." (Reiter, 11/29/17, AM, at 23: 3-6). Mr. Reiter testified he reviewed one-third of the 123 complaint registers. *Id.* at 25:12-17. Mr. Reiter testified that of the complaint registers he reviewed, he found that 67 percent were sustained. *Id.* at 27: 22-24. Mr. Reiter admitted that a 67 percent sustain rate was a "very high sustain rate." *Id.* at 28: 18-20. Reiter and Allgood thus establish the

---

[1] In particular, although it was promised in opening, Plaintiffs presented no evidence regarding a "failure to terminate."

8

absence of a widespread, pervasive code of silence at CPD that protects officers involved in alcohol-related incidents. Further, their testimony did not establish a failure on the part of the City to investigate or discipline officers for alcohol-related incidents.

Plaintiffs failed to present any evidence that a code of silence emboldened Frugoli to drink and drive. Indeed, Frugoli testified to the contrary. Plaintiffs further failed to present any evidence that the City failed to investigate or discipline Frugoli. Plaintiffs spent significant time on the January 27, 2008 accident, but they failed to present any non-speculative evidence that Frugoli was intoxicated at that time. It is significant even Mr. Reiter testified he saw no documented evidence that Mr. Frugoli was under the influence of alcohol on January 27, 2008, when he ran the stop sign. (Reiter, 11/29/17, AM, at 34: 11-15). It necessarily follows Plaintiffs failed to prove the City's culpability for a failure to discipline Frugoli arising out of that incident.

Finally, any generalized or unrelated "code of silence" evidence offered by plaintiffs (*e.g.*, the Mayor's acknowledgement of a code of silence) does not establish evidence of a widespread, pervasive code of silence at CPD that protects officers involved in alcohol-related incidents.

### C. No reasonable jury could conclude that any widespread practice caused plaintiffs' injuries.

The City's alleged practice of a code of silence that protects officers who are involved in alcohol-related incident must be the "moving force" behind plaintiffs' injuries. "[B]oth but-for and proximate causation" must be established to link the challenged action to the constitutional deprivation. *Ruiz-Cortez*, 2016 WL 6270768 at *22. The casual connection must be "tight," and a "mere probability" that he alleged policy will cause any officer to inflict any constitutional injury is insufficient; a plaintiff must show that "*this* officer was *highly likely* to inflict the *particular* injury suffered by the plaintiff," and the injury must have been the "plainly obvious

9

consequence" of the alleged policy. *Brown*, 520 U.S. at 412 (emphasis in original). This is a "rigorous" standard because anything less would water down *Monell* into precisely what it cannot be - *respondeat* liability. *Id.*

Again, it is not enough to establish a generalized policy as the moving force behind Frugoli's actions. To succeed on their *Monell* claim, plaintiffs must demonstrate the existence of a code of silence that protects officers who are involved in alcohol-related incidents, and they must demonstrate that this *specific* code of silence caused the constitutional injuries. Mem. Op. & Order, Dkt. #405, at 6. There is no evidence to support the conclusion that Frugoli drank and then drove on April 10, 2009, because of the alleged *de facto* policy and practice. In fact, Frugoli testified he knew could not drink and drive without consequence. (Frugoli, 11/30/17, AM, 65: 11-14). Consistent with Frugoli's admission, plaintiffs' expert testified that even a reasonable officer would know that if he is in a traffic accident, he is going to get in a lot of trouble, and even the code of silence is not going to protect him. (Reiter, 11/29/17, AM, at 45: 7-11).

The evidence presented at trial established that Frugoli's decision to drink and drive on April 10, 2009, had nothing to do with the City or an alleged *de facto* policy. Plaintiffs have not and cannot establish Frugoli's actions on April 10, 2009 were the result of any widespread, pervasive code of silence at CPD that protects officers involved in alcohol-related incidents.

### D. Plaintiffs have not provided evidence the City was deliberately indifferent.

Another "stringent standard of fault" requires proof the City was deliberately indifferent to constitutional rights being violated as result of the purported policies at issue. *Brown*, 520 U.S. at 415. Municipal liability under section 1983 only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*

10

*v. City of Cincinnati*, 475 U.S. 483 (1986). Deliberate indifference requires proof of both awareness of a pattern of constitutional violations "substantially certain" to result from the policy an acquiescence to the pattern. *City of Canton v. Harris*, 489 U.S. 378, 397 (1989) (O'Connor concurring in part and dissenting in part).

Plaintiffs have presented no evidence that the City or its policymakers were deliberately indifferent. Plaintiffs have not even made such an argument in their case. More importantly, Plaintiffs' case-in-chief has actually provided evidence the City was not deliberately indifferent to officers involved in alcohol-related incidents. The City's high sustained rate for alcohol-related complaint registers refutes any allegation that the City is deliberately indifferent to alcohol-related misconduct by its officers. (*See* Allgood, 11/28/17, PM, at p. 58-59; Reiter, 11/29/17, AM, 28: 18-20.

## CONCLUSION

Plaintiffs have failed to provide a legally sufficient evidentiary basis at trial so that a reasonable jury could find: (1) a constitutional violation; (2) the existence of the alleged *de facto* policy, *i.e.*, a widespread, pervasive code of silence at CPD that protects officers involved in alcohol-related incidents; (3) that the specific *de facto* policy was the moving force behind the constitutional violation; and (4) the City's policymaker was deliberately indifferent. Therefore, this Court should direct a verdict in favor of the City and against plaintiffs.

WHEREFORE, for the foregoing reasons, Defendant City of Chicago respectfully requests this Honorable Court grant its motion for a directed verdict on plaintiffs' *Monell* claim and for any other relief this Court deems appropriate.

                    Respectfully submitted,

               By: <u>s/ Katherine C. Morrison</u>
                   One of the Attorneys for Defendant,
                   CITY OF CHICAGO

Terrence M. Burns
Harry N. Arger
Katherine C. Morrison
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 627-2302 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2017, I electronically filed the foregoing **Defendant City of Chicago's Motion for Directed Verdict** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system.

By: s/ Katherine C. Morrison