**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE ANDRES CAZARES, Special Administrator of the Estate of ANDREW CAZARES, Deceased | ) ) ) ) | |
| Plaintiff, | ) | Case No. 1:13-cv-05626 |
| | ) | |
| v. | ) | Honorable District Judge Kendall |
| | ) | |
| JOSEPH FRUGOLI, JOHN R. MORAN, PRIMERO, INC., an Illinois Corporation, METROPOLITAN BANK LAND TRUST 1463, and CITY OF CHICAGO, a municipal corporation | ) ) ) ) ) ) | Honorable Magistrate Judge Martin |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| FAUSTO T. MANZERA, as Special Administrator of the Estate of Fausto A. Manzera, deceased, and Maria Valez, as co-special administrator of the Estate of Fausto A. Manzera, deceased. | ) ) ) ) ) ) | Case No. 1:13-cv-05626 |
| | ) | |
| Plaintiff, | ) | Honorable District Judge Kendall |
| | ) | |
| v. | ) | Honorable Magistrate Judge Martin |
| | ) | |
| JOSEPH FRUGOLI, JOHN R. MORAN, PRIMERO, INC., an Illinois Corporation, METROPOLITAN BANK LAND TRUST 1463, and CITY OF CHICAGO, a municipal corporation | ) ) ) ) ) ) | |
| Defendants. | | |

**CITY OF CHICAGO'S POSITION PAPER REGARDING DISCOVERY VIOLATION**

Defendant, City of Chicago ("City"), by and through its undersigned attorneys, for its position paper on the discovery violation during trial, states as follows:

**INTRODUCTION**

This position paper is being submitted pursuant to this Court's order of February 8, 2018. (Dkt. No. 495). During the trial in this matter, Plaintiffs filed a Motion for Sanctions ("Motion") (Dkt No. 471) based on the City's non-production of Complaint Register ("CR") No. 194190 for Defendant Joseph Frugoli ("Frugoli"). The case was subsequently resolved and Plaintiffs withdrew their Motion. (Trial Transcript, December 8, 2017, 148: 17-22). On April 2, 2018, this Court entered an order striking Plaintiffs' Motion for Sanctions as moot. (Dkt No. 504).

During the course of pretrial discovery, the City produced Frugoli's CR history, for which the Chicago Police Department ("CPD") provided a report based on a search of three different databases, and the CR files corresponding to CPD's investigation of the CRs listed on that history. Frugoli's CR history did not reflect any CRs with a sustained finding against him. However, at trial, Frugoli testified for the first time that he had received a sustained CR 25 years earlier. Following Frugoli's testimony, the parties discussed the issue with the Court. None of the attorneys, including Frugoli's attorney, was aware of the existence of this sustained CR. Counsel for the City immediately requested that CPD conduct a search for that CR.

After multiple searches by CPD, CR No. 194190 was found and produced during the trial. As part of the renewed searches, an additional CR for Frugoli (CR No. 194584) was located and produced.

The City acknowledges it did not timely produce these documents during the course of discovery. These errors were not intentional because the City and its attorneys believed the three different databases used for searching for CRs contained all of Frugoli's CRs and therefore, that the complete CR history and the corresponding files for Frugoli had been produced during discovery.

Following the discovery of the two additional CRs, CPD, working with the Law Department and counsel for the City, sought to determine why these two CRs were not identified earlier. The results of that investigation are described below. In addition, to minimize the possibility of a similar error occurring in the future, CPD has created a new search tool that allows the user to simultaneously search all databases in which CR information is stored, including two sources that may contain older CR information potentially not stored in the three databases that CPD traditionally has searched when responding to a request for an officer's CR history. To put things in perspective, there are at least 250,445 unique CR numbers in existence, some dating back to as early as 1967, and information about those CRs is stored in a series of databases created over time as technology changed and CPD updated its systems. CPD's new tool allows the user to create a master index listing all CRs for a given officer, regardless of the database in which information about the CRs may be found.

## DISCUSSION

By way of background, the Manzera and Cazares Fifth Amended Complaints each pleaded a *Monell* claim. Specifically, Plaintiffs alleged that certain municipal policies and practices caused Frugoli to drink and drive while intoxicated on April 10, 2009, which resulted in the deaths of Andrew Cazares and Fausto Manzera. Because the underlying incident occurred when Frugoli was off duty and not engaged in any police business, the City's Law Department did not represent him in this lawsuit. Rather, Frugoli was represented by counsel provided to him by his automobile insurance carrier throughout discovery and at trial.

In prosecution of their *Monell* claims, Plaintiffs served written discovery on the City. Among other documents, Plaintiffs requested "any and all Complaint Register files . . . against Joseph Frugoli for any reason whatsoever." (City of Chicago's Responses to Cazares' Request

for Production of documents (d), attached hereto as Exhibit A). To obtain these documents, the Law Department requested Frugoli's CR history from the CPD. Plaintiffs also requested all CRs concerning alcohol-related incidents of other officers. (*See* Exhibit A).[1]

CPD directed the Law Department's request to the appropriate division within CPD, which at that time was the Internal Affairs Division ("IAD"). IAD obtained Frugoli's CR history by searching three large databases maintained by CPD: (1) AutoCR, (2) the Post-1999 CRMS Employee Complaint Register History, and (3) the Pre-2000 Mainframe IAD Archive. AutoCR is a case management system currently used by both CPD's Bureau of Internal Affairs ("BIA") (the successor to IAD) and the Civilian Office of Police Accountability ("COPA") that covers complaints dated from January 2000 to present. No pre-2000 complaints were entered into this system. The Pre-2000 Mainframe IAD Archive is a database that serves as a searchable copy of data obtained and preserved from an older Mainframe application stemming back to 1967, which was used by IAD to store police officers' CR information until it was replaced by the Complaint Record Management System ("CRMS") in 1999. Lastly, the Post-1999 CRMS Employee Complaint Register History is a case management system that bridged the time span between when the Mainframe was actively used and when AutoCR was implemented. The information contained in this third system generally covers complaint dates from September 1994 to present.

After running searches in the above three databases, IAD submitted a memorandum to the Law Department in response to its request, enclosing Frugoli's CR histories. (Attached hereto as Group Exhibit B.) The memorandum listed 20 Complaint Register files by CR number for Frugoli. The earliest of those 20 CRs was dated 1992 and the latest was dated 2009. CR No. 194190 did not appear on the databases searched by IAD during the discovery period. In

---

[1] In all, the City produced over 10,000 pages of CR files in this case.

addition, none of the CR files listed on Frugoli's CR histories showed a final finding of "sustained." (See Group Exhibit B).

On May 5, 2014, the Assistant Corporation Counsel served all parties with its Responses to Plaintiff Cazares' Request for Production of Documents. *See* Exhibit A. In its Response to Request (d), the City stated that subject to certain objections, it "agrees to produce Defendant Frugoli's employee complaint history and the Complaint Register investigative files listed on this history, upon entry of an appropriate protective order."

On October 17, 2014, after conferring with counsel for Plaintiff Cazares pursuant to Rule 37 and the entry of a confidentiality order on October 7, the City produced to Plaintiffs (1) Frugoli's comprehensive employee complaint history (attached as Exhibit C), and (2) the Complaint Register files listed on Frugoli's employee complaint history printouts. (Correspondence from the Assistant Corporation Counsel to Plaintiffs' Counsel is attached hereto as Exhibit D.) Regarding both the employee complaint history and the CR files, the City produced copies of the documents that CPD had provided to it, as discussed above. To reiterate, Frugoli's CR history and the CR files produced by the City did not indicate any sustained finding against Frugoli and did not include or refer to CR No. 194190.

Thereafter, Frugoli sat for a deposition in this case on three occasions. During the first deposition, Frugoli asserted his Fifth Amendment rights and did not answer questions. During the next two deposition sessions, May 16, 2013 and April 28, 2015, Frugoli testified on various issues, including his CR history. Frugoli testified that CRs had been initiated against him and he had given statements regarding those complaints. (Deposition of Joseph Frugoli, April 28, 2018, p. 32, attached hereto as E). Frugoli further testified he did not recall the specifics of any of the CRs filed against him:

5

> Q: In the course of your employment with the Chicago police, are you aware of any complaints that had been filed against you that resulted in a complaint register?
>
> A: I know there have been—there was, I know there was ones filed. I don't know the specifics of them. I mean they were over a 20-year period or over a 19-year period.

Ex. E, p. 31

> Q: Do you recall the details of any of the complaints that were made against you?
>
> A: Not really right now.

Ex. E, p. 33.

Perhaps because he testified that he had limited or no recollection of any specifics or details regarding the complaints against him, Frugoli was not asked at any of his depositions if he ever had a CR sustained against him. And because Frugoli was represented by private counsel provided through his automobile insurance carrier, counsel for the City never met with Frugoli to prepare him for his deposition or otherwise, and the City never had the opportunity to discuss with him his disciplinary history. Certainly if Frugoli had mentioned or referenced the existence of a sustained CR during one of his depositions, the parties would have learned of it and conducted further investigation, as the existence of a sustained CR would have been relevant to the *Monell* claim and the City's defense against it. Nothing in Frugoli's deposition testimony suggested the production of his employee complaint history or his Complaint Register files was deficient. And, as discussed below, Frugoli did not mention the sustained CR until the trial. In short, nothing occurred during discovery to cause counsel for the City to believe it was necessary to conduct further investigation of Frugoli's CR history.

The case proceeded to trial on November 30, 2017. On the fourth day of trial, Frugoli was called to the witness stand to testify. During examination by Plaintiff's counsel, Frugoli revealed for the first time he had received a sustained CR in 1992 stemming from a bar fight.

6

(Trial Transcript, November 30, 2017, pp. 14, 86-91). Also, for the first time, Frugoli testified he had been suspended without pay following that CR investigation.

Following this trial testimony, the Court questioned Frugoli about the CR outside the presence of the jury. Frugoli provided as much detail as he could remember in order to aid the parties in locating any corresponding documentation. Counsel for the City immediately requested that CPD search for the missing 1992 CR.

As explained above, CPD's general practice – which was followed during discovery in this case – was to respond to a request for an officer's CR history by searching three different databases: AutoCR, the Post-1999 CRMS Employee Complaint Register History, and the Pre-2000 Mainframe IAD Archive. Following Frugoli's testimony at trial, BIA, the successor to IAD, again searched these three systems, but did not locate the missing CR.

Following this unsuccessful search, counsel for the City requested CPD run additional searches for the CR. A paralegal within CPD's Office of Legal Affairs recalled a screen in the now-retired Mainframe that reflected certain information regarding officers' disciplinary history. That recollection led CPD to search a different database, the "CLEAR System Mainframe Disciplinary History Archive," that was previously utilized by CPD's Finance Division and contains information about payroll changes. This database contains information relating to disciplinary actions that affected an officer's salary only (i.e., suspension with no-pay). A reference to CR No. 194190 was located in this database because it affected Frugoli's salary due to his suspension without pay. Like the Pre-2000 Mainframe IAD Archive, the CLEAR System - Mainframe Disciplinary History Archive is a database that serves as a searchable copy of data copied and preserved from the now-retired Mainframe application used by IAD between 1967 and 1999. It partially overlaps with the Pre-2000 Mainframe IAD Archive, CRMS, and AutoCR.

7

Information in this database includes CR number, violation, description of discipline, effective date, and entry date. As explained above, CPD located CR No. 194190 using this database.

This information, however, did not appear on the Pre-2000 Mainframe IAD Archive that IAD searched during discovery (and that BIA re-searched following Frugoli's trial testimony). Given the various data transfers from CR system to system over the years, CPD cannot determine why the CR appeared in one archived database, but not the other.

While CPD searched for the missing 1992 CR, counsel for the City also conducted its own search. This included searching a list of paper CR files that date from 1972 to 2004 and are currently stored in a CPD warehouse. This list, which was compiled under the supervision of Dykema, was not intended to be (and is not) a complete list of all CRs from the relevant time period. Rather, it is a list of what is stored in the warehouse and was used, for example, to help CPD physically locate CR files in the warehouse after they had been requested.

Counsel for the City located CR No. 194190 (the sustained CR) on the warehouse list, as well as a second CR (No. 194584) that had not been identified and disclosed during discovery. The second CR, which resulted in a not sustained finding, was immediately tendered to plaintiff's counsel and the Court was promptly advised. When the warehouse list was compared to the list of Frugoli's CRs found on the three databases searched during discovery, eight of the previously disclosed CRs did not appear on the warehouse list, although they appeared on CPD's Pre-2000 Mainframe IAD Archive.

CPD does not know why CR No. 194190 appeared on one archived database (the CLEAR System - Mainframe Disciplinary History Archive), but not the other (the Pre-2000 Mainframe IAD Archive), or why CR Nos. 194190 and 194584 appear on the warehouse list, but do not appear in any of the three databases that CPD has traditionally searched for purposes of

8

responding to requests for an officer's CR history.  It is possible that during the transfer of data from the Mainframe to a new platform, some information may not have been migrated.  Prior to this event, CPD believed that the searches it was conducting - the pre-2000 Mainframe IAD Archive, CRMS, and AutoCR - provided a complete CR history for Frugoli.

The City recognizes a similar error, as to what happened in this case, could occur in future cases under CPD's previously used search process.  As a result, following the discovery of CR No. 194190 on the CLEAR System – Mainframe Disciplinary Archive and the warehouse list, the City has initiated a process to search these additional sources to confirm that its CR disclosures are complete.  In addition, CPD has created a pilot search tool that will allow it to simultaneously search all databases in which CR information is stored, which should eliminate any gaps in in the databases that may exist.  For example, if someone were to search for "Joseph Frugoli" in CPD's new search tool, all of Frugoli's CRs would appear in a single index listing, *inter alia*, each CR by number and the database(s) on which information about that CR may be found.  CPD anticipates this new search tool will serve as an additional layer of quality control to significantly reduce the possibility that an existing CR file will not be identified or produced.

## **CONCLUSION**

The City acknowledges the CR files in question should have been produced during discovery.  However, the City submits non-production of these files was not the result of willful or deliberate behavior.  Moreover, the City has analyzed the issue, recognized the problem, and implemented a new process to minimize the possibility of similar errors in the future.

Respectfully submitted,

| | |
|---|---|
| s/ Terrence M. Burns_____ | s/ Katherine C. Morrison_____ |
| One of the Attorneys for Defendant, | One of the Attorneys for Defendant, |
| City of Chicago | City of Chicago |

Terrence M. Burns
Katherine C. Morrison
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, I electronically filed the foregoing **Position Paper** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system.

By: s/ Katherine C. Morrison